Yes, Your Honor. Beth Mary Bollinger, on behalf of Mr. Grace, Joseph Harrington, is here present in the courtroom on behalf of the government. And I'd like to reserve two minutes for rebuttal. This is a case on appeal. Mr. Grace was convicted of possession or distribution of methamphetamine as well as an assault of a federal officer under… I just want to jump right to it because I think we're familiar with the facts here. But you're asking for a reversal. But my question, I couldn't tell from it, if we were to accept your arguments, say, on the assault, the drug charge wouldn't have to be reversed, would it? They are separate arguments. The only thing that affects the drug charge is the statements, the argument regarding suppression. The suppression? Yes. But regarding your – just assuming, jumping over that for one moment, the – if the statement of the prosecutor that you allege altered the burden of proof were to be found in violation of the fourth prong, that would only be successful on the assault charge. Is that correct? Your Honor, I believe that's true. I think that the evidence was sufficient with the statement. If there's no reversal of the statement, I don't think that there ends up being any spillover. I just wanted to make sure I knew what you were asking for. And then I think that you also – I think one of the things that you – if you want to go back to the statement, I believe that you asserted that the district court found your client's testimony at the hearing to be credible. I couldn't locate that in the record. Where is the district court make that credibility determination? He found all witnesses to be credible, and he stated – he specifically spoke about Mr. Grace's testimony with regard to him not remembering anything in the hospital. And he talked about – But where does he say that? Oh. Did I miscite it? No. I just asked you. That's what Judge Callahan wanted to know. Where in the record is that stated? I have it at ER 3940. What are the words? Your Honor, I guess it was the comment where he said he kept up a – this is on page 40. He kept up a dialogue, and while the defendant understandably may now say he can't remember details of that, he certainly doesn't deny that they occurred. And how is that? That just doesn't – that doesn't compute to – What's the context of that? I guess I – when I read that, maybe it's just because I know Judge Nielsen, I wasn't physically present because I'm only appeal attorney. But I understood that to mean that he – understandably, because he was under morphine and there was a lot going on, it was understandable that he wouldn't remember that today. I don't think that – I have a question I'd like to ask you. If we reverse on the assault, it does not affect the sentence, does it? If you reverse on the assault, it does not affect the sentence. No, it does not. As the law stands now. It would just be a correction of – it would be just something for the record, as it were, to correct the mistake. Can you repeat that? Maybe that's something, but – Well, I – Anyway, it would have no practical effect. I do think that a person has a right to challenge both a conviction and a sentence, and I think that what Mr. – Well, you're right. Of course, of course. Sure, sure. But I don't think it affects the sentence, no, as the law stands now. And the Supreme Court has not done anything in terms of mandatory minimum sentences, I know, because they've denied a petition for cert I did recently. But – let's see if it's – Well, when he was stopped, he was wounded in the head, right? I'm sorry? What did he – when he was – he was wounded. Got shot in the face, right? Got shot in the face, yeah. Yes. So what was he carrying with him? What was he – Did he have money? Did he have drugs? Well, according to the police version of events, he had done an exchange of money – or drugs for money, and so he would be in possession of the money, would be the police version. And didn't he have some – he had no drugs with him at the time? Paraphernalia or – I believe that's – Baggies or – I believe that paraphernalia was found in the vehicle. Mr. Harrington might be able to speak further to that, but I know that there was the – that the CI was ultimately located with a certain amount of methamphetamine, which was the basis of the methamphetamine underlying conviction. And I would say that the – the issue with the suppression is very specifically a circumstance that I didn't find in the law, which is if someone has requested or talked about wanting to – to speak with my lawyer was his question at the scene and then is under these – the influence of the morphine, as everybody agrees. And these are all agreed-upon facts in terms of his circumstance at the – at the hospital. How much morphine was administered to him? I don't know that that was evidenced in the record, Your Honor. Enough to get him ready for – he was getting – he was getting ready for – And how – And he had been shot in the eye, so presumably a fair amount. I think he was in a lot of pain. And they say he wasn't in pain at the time of – the police testified he wasn't exhibiting pain at the time of the – of their interview, so presumably a fair amount. How long had he – before the time the police talked to him, how much time before that had he been administered morphine? I remember it saying a short time before, Your Honor. The medical – the medical staff was not called to the suppression hearing. That the police understood it to be a short time before. Well, Mr. Grace couldn't really testify to any of that because he had no memory of it. Right. But you have – you do have –  okay, he has the mention of the attorney and you do have the case log that indicates. Is that, you know – is that an – is that an invocation or is it something really in terms of clarification? He says this before even there's any indication of Miranda. There's also testimony in the record that I think from one of the officers that your client is – does anyone want to talk to me? Don't you want to talk to me? Or something along those lines. And then I think you've got a couple of cases as parameters. You've got Martin and Beecher. And Beecher, the facts – I know that you're attempting to liken your situation to Beecher, but Beecher is very different from your facts. Well, and I actually really wanted to distinguish – the bigger thing that I wanted to distinguish for the court was the difference between a coercive – a statement that was gotten coercively and whether or not he's waived his Miranda rights knowingly and intelligently. And I think those are two very different standards. And I think that they get mixed in together because coercive is whether the statements come in under any circumstance. And I was talking about the Miranda – whether the Miranda was knowingly and voluntarily waived. The trial court actually didn't make a ruling one way or the other about the impact of the defendant at my client asking for an attorney prior to his being to the hospital. And I think that wasn't even addressed by the trial court. And I think that that is significant under these facts and circumstances as to whether his waiver was knowingly and or voluntary. And remind me again, what did the officer testify as to his statements? That he was – spoke quietly. They thought he was coherent. That he – that he asked for them to come speak with him. I believe they state that he waived his Miranda warnings. He asked to speak to them. That he asked to speak to them. But again, I mean, he – somebody has to talk to him. So what evidence was then introduced against him? I mean, I'm sorry, Your Honor. Okay, so whatever he said, let's say, was kept out of the case. So where did that get you? It gets us with the government having to prove beyond a reasonable doubt that there was that there was a drug transaction. And there's the additional thing of the additional factor of the Well, he had the money in his pocket, right? Right, but that puts the – And he had the little, you know, he had the paraphernalia. I think it would have been a completely different case if the statements had not been. And you had the you had the the police were there to observe the transaction, didn't they? Yes, but there was no search. There was no pat-down of the CI. There was – I believe there was another individual, Mr. Harrington, correct me if I'm wrong, but I believe there was another individual in the car. It would have been a case of disputed facts that are different than when somebody has issued a statement that states that they committed the offense. You're actually out of time, but I need to go I need a couple more minutes of your time, so I think we get that liberty. But on going to the comment that was made in the closing arguments, I looked through the jury instructions that were given, and the court properly instructed the jury as to the law. And basically, we have to presume that the jurors followed the law. But the way that I see the issues in this case, regardless of how, when you look at that, the jury had to decide whether your client knew that they were police officers. That was the crucial issue. No one was prevented from putting on any evidence. You put on a certain amount of evidence and witnesses that talked about the conditions. There was about where the door was, where the splatters were. The officers put on testimony. There was in the record police marked what they were wearing. An officer, I think, that was some distance away said that he could hear the police, the stance, what the orders were. But the only way your client could be found guilty of the assault on the officer is the elements right listed in the instructions. He had to know that they were police officers. I don't think that there were issues about the discharge of the duties. It was really about the knowledge. Did he know that they were police, or did he think they were robbers? And there was additional evidence from bystanders that said... I'm talking about all the evidence came in. The jury knew that they had to make a decision about whether... They couldn't find him guilty unless he knew that he was a police officer. Actually, I disagree. They couldn't acquit him of acting in self-defense if they believed he was... The instruction was that they cannot acquit him after he behaved in self-defense. I didn't bring the instructions out, but I read them all. Essentially, regardless of... There was no misstatement of the law by the judge. It's a comment that you said that the prosecutor made in closing argument that was not objected to, so we're reviewing it for plain error, correct? It really boils down to, did they think he knew they were police officers? If the jury believed he knew they were a police officer, he can't win on any theory. I just don't see how you could show that you would have gotten a different result had that comment not been made. Obviously, a lawyer was sitting there and wasn't even upset by the comment. If they found that he did not act in self-defense, then it would not matter whether he was a police officer or not a police officer. If they found that he did not act in self-defense... But assault on a police officer isn't one of the elements of that? That they have to know... He has to notice a police officer in the discharge of his duty. In order to prove that you... If you act, no. It is only that if you're acting in self-defense you don't get a self-defense instruction if you knew that they were officers. Now, that's in fact the very specific thing. You don't have to know that they... That's FIOLA v. United States. They don't have to actually know that the person's an officer. They only have to intend their actions. And then if they acted in self-defense, self-defense is not a defense when they know that they're an officer. The only time that knowing they're an officer and not knowing whether they're an officer comes in when they're claiming a self-defense and there's... What was he charged with? He was charged with assaulting a federal officer. But under United States v. FIOLA... What's the element of it? The element is to... I bring up whether it's a general intent or specific intent crime, but it is to assault. Right. As to whether there's been an assault. And the only time that there can be a claim for self-defense is the only time it matters whether you know that it's a federal officer or not is if... We're getting a feedback. I'm echoing. That sounds like someone's coughing. It's me. We're getting a feedback. You're getting a double time on this. But that's really the issue is the reason it mattered whether he was getting self-defense. Well, we don't record then, I guess, huh? Can we fix it? Oh, okay. Well, you're doing the best you can. Well, I think you've answered my question as far as that goes. But I've taken you over on your time. Thank you. But they still have to fix it anyway. I don't know that I've answered your question effectively, but I disagree with your conclusion. No, and I think you've clearly stated your position on that. Okay, and it's also in the briefs. Thank you. He's going to get your volume turned down. So I don't know if you want to wait a moment or if you want to deploy and it's up to you. Well, we don't want double-speak here, do we? Yes. Do you want to wait just a moment? Sure. You know what double-speak is, don't you? You're planning not to do that, right? I've been told that maybe I should watch that sometimes, particularly for my wife. Judge Newman, is it coming in double to you also? No, it's like single-speak here. Okay. It'll be just a moment, Judge Newman. Okay. Thank you. For the record, Joseph Harrington. I'm an assistant U.S. attorney from Spokane, Washington. Did you prosecute this case? I did, Your Honor. I was the trial counsel that prosecuted the case. I think that the issue, the main issue is the fact that error was committed. The determination was during rebuttal closing I misspoke and with respect to introducing the framework about self-defense. Well, how could you misspeak on something like this? I mean, it's so basic. But the defendant raises the issue of self-defense, puts in some evidence on it and the burdens on the government to prove the lack of self-defense beyond the reasonable bounds of misspeak. Judge, I can tell you that my statements were not intentional, and I've been scratching my head ever since this wondering why I used those words and I think it's not an excuse. I'm going to tell the court that I think sometimes in the heat of closing arguments, sometimes a person can say things and maybe not realize the impact of what's being said. So you're conceding the first three prongs. You're just focusing on the fourth prong. Well, I think the district court made a finding that there was error. But you're telling me here there's error too, so are you saying let's just focus on the fourth? I think that's where this court should focus its inquiry. And the question becomes and I want to point out, Your Honor, that I misspoke during the rebuttal argument. I didn't dwell on those comments. If the court looks at the record, it wasn't that there was any lengthy discussion about this burden of proof issue. It was more of an introductory comment, and then the government went into a detail analysis of the facts. The rebuttal closing arguments primarily focused on the facts, trying to set forth the framework of that jury instruction. Right, the court was right. The court got it right. And I would point out, Your Honor, that in the government's opening statement the jury was advised that not only was the prosecutor's statements not evidence, but the court was to instruct them on the law, and they had to follow the law. And that was, again, reiterated during closing argument, that it was the court's role and the court's duty to follow the law and the jury. But the jurors had the instructions that they went to the jury with, right? Judge Pregerson, and I would note that this case was Judge Van Sickle that presided over this case, not Judge Nielsen. And the practice is, and it happened in this case, that a copy of each of the jury instructions was given to each juror. And they were instructed, and they read along while the court instructed the jury, and then only a single copy went back to the jury room. So they had a copy? They had a copy while they were being instructed, and then one, only a single original. Yes, Your Honor. Mr. Harrington, let me give you my concern. Judge Van Sickle says in his order, the court finds that the error likely affected the outcome of the proceedings. Now, I find it very hard to get past that. That's on ER 176. And I realize you did it unintentionally. I also realize nothing's going to fall from this, except an error in instruction is going to be corrected. So is it a terrible thing if we comment, yes, the court found that it was likely to affect the proceedings, and therefore we reverse the sentence? Well, Your Honor, I think I believe under the Olanda test, which is what we're dealing with here, is that it was a plain error. That is one that affected a fundamental right, but the court then has to determine whether reversal is required, and a reversal is required only when the error severely affected the fairness, integrity, or public reputation of the judicial proceedings. And Judge Van Sickle said, if it likely affected the outcome, it certainly affects the reputation. He has it both ways, but you can't have it both ways. Respectfully, Your Honor, I believe that the Olanda test can provide for a fundamental plain error that does not affect the judicial process or cause this kind of misbehavior. How can you say this likely affected the outcome? In other words, the jury was likely to find them guilty on the assault because of this, but it doesn't affect the fairness of the proceeding. How can you say that? Your Honor, I think that's what the Olanda test provides for, the fourth element, is that there can be there can be plain error that affects fundamental rights, but not affect the or severely affect the outcome. And I think that's what Judge Van Sickle found in his order. And I would respectfully submit, Your Honor, in this case there's some things to point out why there wasn't a serious... He said more than He did, Your Honor. the plain error. He said likely, what were the words? Likely affected the outcome. Well, that's different. But isn't prong three, though, affected a substantial right? Yes, Your Honor. And in this case, I guess I'd like to point out that the judge instructed the jury about the government's burden of proof. That was in Instruction No. 1, No. 10, No. 4, 5, 8, 9 and 15. Each of those instructions... That's true, but let me... If you look at Reporter's transcript, page 320 where the judge is talking about self-defense he says in addition to proving all the elements of the crime beyond a reasonable doubt, the government must also prove beyond either 1, 2, or 3. It never says beyond a reasonable doubt when it comes to the elements of the offense. Though he did give a correct instruction. Do you notice that? Maybe that's maybe the court reporter missed something. Your Honor, I can... Page 320 of the Mark A. Snover's transcript. I can represent to the court, to the best of my knowledge, that this does not appear to be an accurate recitation of the actual jury instruction. The actual jury instruction did say, to the best of my recollection, Your Honor, the government must also prove beyond a reasonable doubt either. And if... It went into the jury room. Oh, absolutely. But when the judge was giving instructions from the bench, beyond, it just says beyond either. See there? I do, Your Honor, and if the court would like, I can submit a supplemental excerpt of the record containing the actual jury instruction because I, to the best of my recollection, I'm certain that that jury instruction, which had a fair amount of discussion pre-trial included the phrase, must also prove beyond a reasonable doubt either. And I can submit that supplemental excerpt of the record containing the actual jury instruction itself. Well, they're in the record. The instructions are in the record. Oh, okay, Your Honor. You just didn't submit them in the excerpt. You didn't put them in the excerpt. I didn't put them in the excerpt, Your Honor. They are in the record. I didn't put them in the excerpt, but they're in the record because that's okay. I would like you to address the question the line of questioning that I was asking appellant's counsel towards the end about what does the jury really have to decide here in terms of being found guilty. Could they have found him guilty if they believed that he didn't know they were police officers? I think in this case, Your Honor, the evidence I would submit the evidence was strong and it showed that the defendant knew that these were police officers and that was the basis for the conviction. And I can tell you why. Well, I know what all the evidence is. He had a better claim than some people do in terms of it was dark, there was conflicting evidence about whether you could see all of the police, what the police officers were wearing, what you could hear, all of that. But the question is, could they have found him guilty of what they found him guilty of if they thought he didn't know they were police officers? I don't believe so, Your Honor. I think that he was charged with an assault on a federal officer and I think that was, at least with respect to self-defense, I think that was one of the elements of what the defendant came forward with was whether he knew they were police officers, or federal officers. Well, do you have to prove that, that they're police officers, that they're officers in order for him to be found guilty? I think the government, I think at least in this case the government did. Not whether you did, is that part of your burden of proof? Is that what the law says? I mean, can you be found guilty at this time if you don't know they're police officers? I don't believe you can, Your Honor. I think you have to know that there's got to be a reasonable basis. You know, I remember there's a statute that I think you read if you assault a federal judge I think even if you don't know he's a judge under the guidelines I'm just joking 50 to 100 years in jail but you don't have to know that he's a judge I'm not clear It always gave me a lot of comfort when I walked through a rough neighborhood I'm not clear I don't know if you have to prove Prosecution 101 is what are the elements that you have to prove if you're going to ask someone to find guilty. Is that an element of what you had to prove for them to be found guilty of assault on a federal officer? Your Honor I mean, it's like prosecuting someone for murder. Does there have to be someone dead? I think so. Well, in the record, and I'm looking at the supplemental excerpt of the record at 320 with respect to the self-defense instruction the jury was instructed that the defendant knew Special Agent Zydak was a law enforcement officer and the government had the burden of proof, had to prove beyond a reasonable doubt that the defendant did know that With respect to that question I think that focuses on whether the self-defense was a viable legal theory Now with respect to the elements of the crime regardless of the setting aside the affirmative defense I believe that I'm not certain you have to know that they're a federal police officer or not and I have to look at the jury I don't think It's hard for me to believe that you prosecuted him and you don't know what you have to prove Your Honor Let me ask you this Your Honor, I can tell you at 319 of the record, the jury instruction said does not require that the defendant knew, with respect to the assault the substantive offense the defendant did not have to know Special Agent Zydak was a federal officer With respect to the self-defense instruction, the defendant would have had to know he was a federal officer At least that's the way the instructions read and that's how the jury was charged Okay, so then that makes your mistake worse than if it were an element of what you had to prove for him to be found guilty I think Your Honor, I think the question was whether the self-defense instruction provided that the government has proven beyond a reasonable doubt one of the three elements that the government was required to prove as the burden shifted Were you saying that to prove self-defense you had to show beyond a reasonable doubt that the defendant knew that these were law enforcement officers For the self-defense? Yeah, the self-defense For self-defense, and again I'm referring to Supplemental Excerpt 320 the government was required to prove beyond a reasonable doubt that the defendant knew Special Agent Zydak was a law enforcement officer or Oh, I see it or the defendant did not reasonably believe that force was necessary to defend against an immediate use of force or the defendant used more force than it was that appeared reasonably necessary under the circumstances So is that what you have to prove as an element of the crime or is that what you have to prove to negate self-defense? It's what has to be proven to negate self-defense and it doesn't have to be all three of those elements but it has to be one of the three Did the judge tell him that that it doesn't have to be all three but just one? Well, Your Honor, the word or is used rather than the word and so it's Well, you know, or can mean And that's to be juxtaposed with the defendant's reliance on self-defense the defendant has to come forward Is this instruction out of what book is it out of? This is out of the Ninth Circuit Model Jury Instructions, Your Honor It has I knew the special agent Zydak it says that it covers this law enforcement business Your Honor, this is modeled after the Ninth Circuit Model Jury Instructions I believe other than the name I think the rest of it is consistent it is the same as the Ninth Circuit Model Jury Instructions One of the things that bothered me was you know, the guy did say do I have a right to have my attorney present? Did they answer that question? The record shows, Your Honor that according to the defendant he said at the time that he was arrested he asked whether he had the right to have his attorney present and according to the defendant Was this when he was having the morphine? No, Your Honor, what happened was after the defendant left the scene where the drug trafficking the drug distribution took place and the shotless fires he then took law enforcement officers on this high speed chase Did they have a red light and a siren? Yes, Your Honor, there was at least initially there was at least two cars and then there were more cars following him lights flashing, sirens going The defendant was going the wrong way on one-way streets was going through red lights and stop signs was failing to yield to the officers and eventually had to be stopped. He didn't stop when officers had to crash into his vehicle At the time then, Your Honor he had suffered an injury to his face it was from the flying glass from the windshield and a part of the bullet jacket that had become dislodged and hit him in the face so officers immediately called for medical assistance and according to the defendant at that time The jacket? The lead bullet has got a copper jacket and it came off and at least that's what the officers believed is that the jacket hit the defendant in the cheek and the expert testimony was from the defense that the bullet more than likely exited through the back window the back window had shattered somewhere to the upper left center of the window so the defendant was actually not hit with the bullet but the bullet jacket that came dislodging When he asked Do I have a right to have my attorney present? Was that in the hospital? That was at the scene while medical assistance was being called for. He was provided medical assistance and then ambulance to the local hospital According to DEA protocol then Had he been administered morphine then? He was administered morphine after he had arrived at the hospital not at the scene where he was arrested and according to the defendant it was at the scene at the time he was arrested that he asked whether he had a right to have his attorney present So he got the morphine at the hospital Yes Was he questioned at the hospital? He was questioned at the hospital Did he waive his Miranda rights? He did Your Honor What happened was according to DEA protocol the local agencies then took over the investigation Lieutenant Rose from the Spokane County Sheriff's Department went up to the hospital and waited outside the defendant's room and according to Lieutenant Rose Judge Van Sickle or the district court found Judge Nielsen at that time found him to be very credible and was impressed by his testimony stated the defendant asked whether anyone was going to talk to him and whether anyone wanted to hear his side of the story and asked that more than one time A second local officer then, Detective Giese, arrived and both officers then went into the room where the defendant was waiting for some medical treatment For his surgery For his surgery That's correct He was advised of his Miranda warnings He acknowledged his rights and agreed to waive them and then talked to the officers The officers said that he was coherent, made eye contact his statements seemed to be consistent with the events that had occurred he was responsive and at one time had asked the officers to come back and continue to talk to him Interestingly your honor he not only said that he admitted to engaging in a drug transaction but also then said claimed that there was a masked man that came up and he thought it was a robber and that's why he fled from the police At the suppression hearing then the defense wanted to suppress the exculpatory evidence but did not want to suppress the inculpatory evidence which was an interesting theory I think you got that reversed The defense wanted to suppress the inculpatory but not the exculpatory which where he immediately after he was arrested he said he wasn't a Johnny come lightly with a robbery charge  That's correct Another one of those little misspeaks Sorry your honor Let's see I would note that with respect to sentencing in this issue the sentence that was imposed was driven entirely by the drug trafficking conviction and this assault conviction really had no significant impact on the ultimate sentence that was imposed The court imposed the statutory and mandatory minimum which was associated with the drug count Assuming that the assault stands at Was there Was there a lesser There was not a lesser included The defense theory in this case the defense argued on the one hand the defendant had no intent to assault special agent Zydak and then asked the jury if they did find he had the intent that he it was a self defense theory and that's why he assaulted special agent Zydak which seemed to be somewhat inconsistent Wow So Any questions Judge Noonan No I don't have any further questions Okay You're a free man Alright Your Honor Thank you very much for your time We'll give you a minute for rebuttal Your Honor To answer your question Could they have convicted Mr. Grace of assaulting a federal officer if they did not find as a jury that he had the intent if they knew it was a federal officer yes they could convict him of that but only if they decided he wasn't acting in self defense that's why that is so critical in terms of the burdens of proof being shifted and I completely am sure Mr. Harrington didn't intend that shifting given how the statements are done but it ends up being a very critical problem for purposes of the conviction the other issue Your Honor would be that Judge Nielsen did do the suppression hearing Judge Bensicle was the trial attorney so that's why I mentioned that about Judge Nielsen to the extent that the court doesn't find that to be him commenting on the effects of the morphing of why Mr. Grace didn't have any memory I would just say that he didn't make any finding with credibility one way or the other and that there wasn't but the evidence of Mr. Grace asking for an attorney or talking about his attorney at the scene was not cross examined or rebutted if you have any further questions didn't they put something on that the officers just told him don't worry about this you're going to the hospital now that was my client's testimony that he said do I have a right to an attorney and they said we'll take care of that at a later point however it is it's my client's specific testimony but they got him on the drug charge they got him on the drug charge which is the only way that the drug charge is being challenged is through the suppression hearing the only way that I've challenged the conviction on the drug charge is through the request to reverse the decision on the suppression that the statement should have been suppressed that the statement should have been suppressed that is my issue for the drug charge oh your client's issue should have been suppressed thank you very much thank you the matter is submitted the next matter U.S. v. Norman Hugh Smith the matter
judges: Pregerson, Noonan, Callahan